IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:04CV152-02-MU

JONATHAN L. HENSLEE        )
    Plaintiff,        )
                )
      v.        )
                )
SHERRI SIMMONS, Lieute-   )
  nant at the Rutherford )
  County Jail; and       )
ALAN YOUNG, Employee at   )        O R D E R
  the Rutherford County  )
  Jail.                  )
    Defendants.          )
_____)

**THIS MATTER** comes before the Court on more than 70 Motions which Plaintiff has filed with the Court.

By way of background, this case is a § 1983 action which Plaintiff has filed against the above named Defendants, complaining that during a two week period, from February 4, 2003 until February 18, 2003, his clothes were taken from him, he was made to wear a suicide smock, and he was kept in four-point arm and leg restraints. (Doc. No. 1). Plaintiff further alleges that during that period, he was unable to properly use the bathroom due to the presence of the smock and the restraining devices, so he was forced to soil himself and to shower, without aid of his toiletries. (Id.). Plaintiff alleges that he also was made to sleep on an iron box spring without a mattress or linen; and that sleeping under those conditions caused him to sustain an injury

to his elbow for which he underwent a corrective surgical procedure.

During Plaintiff's deposition[1], he testified that after approximately one week of this restraint, he wrote a letter to Defendant Young advising of his belief that his restraint/conditions were unlawful, and requesting that they be terminated. (Doc. No. 194-1 at 45-46). On the following day, Plaintiff reportedly filed the only grievance which he submitted during his entire 8 ½ month period of detention at the Rutherford County Jail. (Id. at 47). Such grievance reportedly complained that the restraint was unlawful and should be discontinued. (Id. at 48).

Plaintiff further testified that during the period of his unlawful restraint, he was visited by his criminal defense attorney, Michael Edwards. (Id. at 54). More particularly, Plaintiff states that on the second day of his restrictions, he spent 30 minutes or more in a visiting booth with Mr. Edwards, at which time Edwards observed his predicament. (Id. at 54-55). According to Plaintiff, Edwards advised that he would look into the matter and try to have Plaintiff moved to Central Prison for safekeeping. (Id. at 55). Plaintiff also stated that his

---

[1]Plaintiff was deposed on May 27, 2009, at the Marion Correctional Institution where he currently is being housed.

unlawful restraint was observed by Rutherford County Jail Officer Susan Lovelace, and by three detainee/inmates, Billy Bradley, Abraham Dewberry and Joshua Hensley. (Id. at 56 and 59-60).

Defendants deny that Plaintiff ever was placed in either a suicide smock or four-point restraints during the 8 ½ month period of his pre-trial detention at the Rutherford County Jail. (Doc. No. 55). Defendants report that Plaintiff merely was placed in protective custody at the Jail in order to protect him from the risk of harm posed by fellow inmates due to the nature of Plaintiff's charges. (Id.). Defendants further contend that the elbow injury which Plaintiff refers to was sustained by him during an earlier period of incarceration in the N.C.D.O.C. while engaging in routine physical activity, not by any misconduct of Defendants. (Doc. No. 194).

On July 10, 2009, Defendants filed a Motion for Summary Judgment seeking a summary dismissal of Plaintiff's action. (Doc. No. 193). In support of that Motion, Defendants have submitted a Declaration from Attorney Edwards reflecting that although he did visit Plaintiff on the occasion in question, he did not observe the conditions which Plaintiff describes. (Doc. No. 195). Mr. Edwards also denies having had a conversation about any unlawful restraints or a "safekeeping" transfer. (Id.).

Defendants also have submitted copies of certain of Plain-

tiff's medical records. (Doc. No. 199). Several of those re-cords reference basketball and weight lifting injuries to Plain-tiff's arm. (Id.). Those injuries predate the period of the alleged restraint. (Id.). Certain of the records also tend to suggest that the surgery which Plaintiff underwent was due to the pre-existing injuries and not due to some condition he sustained while in the custody of the Rutherford County Jail. (Id.).

In addition, Defendants have submitted a copy of a grievance dated February 26, 2003, that is, eight days after the conclusion of the alleged restraint. (Doc. 197, Ex. C). Such grievance makes no reference to the restraint, but merely seeks a prescrip-tion for Prozac. (Id.).

As was noted, Plaintiff has filed numerous Motions seeking any number of things. The Court now will rule on said Motions as hereafter indicated.

### 1. <u>Documents erroneously docketed/labeled as motions</u>

Plaintiff filed a reply to one of Defendants' responses concerning medical records. (Doc. No. 166). Plaintiff's reply complains that Defendants' response to his request for copies of medical records and grievances is vague and unresponsive. Never-theless, Plaintiff's reply erroneously was docketed as a Motion. Therefore, the Court will direct the Clerk to terminate the so-called motion and re-label the entry as a reply.

Similarly, Plaintiff filed a document captioned as a "Motion in Response to Defendants['] Summary Judgment. Part Two." (Doc. No. 204). However, such document merely sets forth certain matters which Plaintiff deems responsive to Defendants' Motion for Summary Judgment. As such, the document is not a motion but a response. Nevertheless, because Plaintiff himself has captioned this document as a Motion, the Court will <u>dismiss</u> it as moot.

### 2. Renewed Motions for Appointment of Counsel

Plaintiff previously has filed numerous Motions seeking the appointment of counsel, all of which were denied for his failure to establish that his case presents the kind of extraordinary circumstances that warrant the assistance of counsel. Undaunted, Plaintiff now returns with his renewed Motions for the appointment of counsel on the basis of his confinement in prison (Doc. No. 147); and on the ground that "[his] confinement [may] tamper[] with [his] ability to contact[] witnesses . . . ," and securing contact information for his witnesses along with photocopying his materials is "highly burdensome" (Doc. No. 160).

As was previously explained to Plaintiff, however, there is no constitutional entitlement to the appointment of counsel in this civil proceeding. <u>Whisenant v. Yuam</u>, 739 F.2d 160, 163 (4th Cir. 1984). Rather, in order to invoke the Court's assistance in securing an attorney to represent Plaintiff, <u>pro bono</u>, he must

demonstrate that his case is of the type and complexity that con-
stitutes exceptional circumstances. <u>Id</u>. Plaintiff's claim of
unlawful restraint and resulting injury simply is not of that
ilk. Moreover, Plaintiff continues adequately to present his
issues and arguments to the Court. Accordingly, his Motions for
the appointment of counsel (Doc. Nos. 147 and 160) will be
<u>denied</u>.

### 3. **Motions to Amend Complaint**

Plaintiff seeks permission to amend his Complaint to "add in
damages up to $20,000 d[ue] to the mental and emotional abuse
that occurred during the unlawful acts that took place between 2-
4-03 and 2-18-03." (Doc. No. 168); to seek punitive damages (Doc.
No. 182). Notwithstanding the untimeliness of these Motions,
Defendants expressly do <u>not</u> oppose Plaintiff's requests to amend
his Complaint in these ways. (Doc. Nos. 188 and 192). There-
fore, both Motions (Doc Nos. 168 and 182) will be <u>granted</u>.

### 4. **Motions for hearing, trial and rulings**

Plaintiff has filed several Motions seeking rulings on his
numerous motions, a preliminary hearing on the subject Motions,
and a trial. (Doc. Nos. 121, 124, 214, 241 and 256). Because
the Court is ruling on all outstanding Motions which properly can
be reached at this time, and does not find it necessary to hold a
hearing in order to comprehend Plaintiff's arguments, his Motion

for a Hearing (document # 256) will be <u>denied</u>, but his first Motion for rulings on his motions will be <u>granted</u> (Doc. No. 121). Furthermore, the Court has not yet resolved Defendant's Motion for Summary Judgment; therefore, Plaintiff's Motion for a trial (Doc. No. 214) will be <u>dismissed</u> as premature. The remaining Motions seeking rulings (Doc. Nos. 124 and 241) will be <u>dismissed</u> as moot.

Last concerning his motions for rulings, Plaintiff has filed a Motion asking the Court to grant all of his requests to depose his witnesses by written questions and to inspect their statements on the authority of 28 U.S.C. § 1915 (Doc. No. 173). Contrary to Plaintiff's belief, however, § 1915 does not authorize the deposition of non-parties or anyone else, nor does it authorize the Court to compel non-parties to prepare statements for Plaintiff. Accordingly, this Motion also will be <u>denied</u>.

### 5. <u>Motions concerning Susan Lovelace and Dr. Bush</u>

Plaintiff alleges that Susan Lovelace, a Rutherford County Jail employee, observed and interacted with him on the occasions while he was being unlawfully restrained. Consequently, Plaintiff has submitted several Motions seeking permission to depose Ms. Lovelace by written questions, to have her respond to his interrogatories, to secure her attendance at his trial, or to otherwise be allowed to garner information about and/or "evi-

dence" from her.  (Doc. Nos. 107, 117, 132, 149, 175, and 176).

The Court is aware that it has no authority to compel Ms. Lovelace, a non-party, to submit to a deposition, or to answer Plaintiff's interrogatories.  Nevertheless, if Ms. Lovelace has information concerning Plaintiff's claims, which information can assist the Court in resolving this case, the Court believes that Plaintiff at least should be permitted to ask her to provide that information for the Court's review.  Therefore, the Court will allow Plaintiff to submit Document Number 117 to Ms. Lovelace and to ask her to answer questions one, two and four, all of which relate exclusively to any interaction she may have had with Plaintiff during the period in question.

In addition, the Court notes that it previously granted Plaintiff permission to attempt to secure answers from Dr. Bush (Doc. Nos. 69 and 106).  However, Plaintiff's document was returned to the Court because Dr. Bush was no longer at the last known address which Plaintiff then had for him.  Inasmuch as Plaintiff has updated his address for Dr. Bush, the Court will direct the Clerk to re-mail Doc. No. 69 to the doctor.

On the other hand, the questions which Plaintiff seeks to pose to Dr. Bush by Doc. No. 224 are, to a large extent, hypothetical and, therefore, require the doctor to provide his answers as an expert witness, not as Plaintiff's treating

physician.  Therefore, that Motion will be <u>denied</u>.

### 6.  **Motions seeking information about Defendants**

Plaintiff has filed a Motion seeking records concerning any other lawsuit which has been filed against Defendant Lewis in order to enable him to present such "evidence for possible character flaws of this Defendant." (Doc. No. 123).  However, because that request was part of an outstanding discovery request to which Defendants timely responded, Defendants properly opposed the request as premature.  (Doc. No. 134).  Under these circumstances, the subject Motion will be <u>dismissed</u> as moot.

Plaintiff has filed a Motion seeking an order forcing both Defendants to undergo polygraph examinations in order to ascertain the truth regarding the facts in this case.  (Doc. # 148).  Defendants oppose the Motion, correctly noting that polygraph results typically are not admissible, and that such Motions routinely are denied.  Because the Fourth Circuit consistently has noted that the results from such tests are not admissible, <u>see, e.g.</u>, <u>United States v. A&S Council Oil Co.</u>, 947 F.2d 1128, 1134 (4th Cir. 1991), this Motion (Doc. No. 148) will be <u>denied</u>.

Plaintiff also has filed a Motion for production of "major grievances" filed against Defendants involving the "misuse of shackles."  (Doc. No. 165).  In response, Defendants report that they already have provided Plaintiff with the only information

concerning allegations against either Defendant, which informa-
tion consists exclusively of a lawsuit filed against Defendant
Lewis and other Jail employees (filed in this Court under case
number 1:08CV389-02-MU). (Doc. No. 188). Because Plaintiff has
not established the probable existence of any additional matters,
his Motion (Doc. No. 165) will be <u>denied</u>.

In addition, Plaintiff has filed a Motion seeking to compel
Defendants to produce documents concerning misconduct by Defen-
dant Lewis during "which she conducted sexual activities on the
job," and for which she reportedly was reprimanded and demoted."
(Doc. No. 250). Defendants oppose that Motion on the grounds
that the information being sought, assuming it exists, is irrele-
vant to Plaintiff's claim, it will not lead to any admissible
evidence, and the information is protected by State confidenti-
ality rules. (Doc. No. 252). By his Amended Motion (Doc. No.
266), Plaintiff claims that the employment records would allow
him "to show [Defendant Lewis'] incompetent behaviors and
decisions"; and that such information will show her "reckless
decisions and choices and her character and reputation."

However, the Court has determined that the information which
Plaintiff is seeking is, indeed, irrelevant to his claim of
unlawful restraint, and is not reasonably calculated to lead to
the discovery of admissible evidence. <u>See</u> <u>WLR Foods, Inc. v.</u>

10

<u>Tyson Foods, Inc.</u>, 65 F.3d 1172, 1184 (4th Cir. 1995).  As such, the subject Motions (Doc. Nos. 250 and 266) will be <u>denied</u>.

**7.  <u>Motions concerning purported inmate witnesses</u>**

Plaintiff has filed multiple motions seeking permission to depose by written questions, or otherwise to secure statements from inmates Bradley, Dewberry and Hensley (Doc. Nos. 91, 93, 125, 128, 129, 131, 173 and 202).  However, as Defendants have noted, Plaintiff's requests to secure the purported witnesses for trial is premature inasmuch as it is not altogether clear that a trial even will be conducted for this matter.

Moreover, given the potential for self-serving, fabricated statements and the fact that the Court is going to allow Plaintiff to request information from Ms. Lovelace, the Court will <u>deny</u> Plaintiff's Motions to secure statements from the subject inmates.  In the event that Ms. Lovelace's answers tend to establish that she did observe Plaintiff in the subject restraints during the period in question, Plaintiff may seek reconsideration of his Motions to attempt to secure information from the subject inmates.

Plaintiff also has filed a Motion asking the Court to provide certain "Affidavit" forms to the foregoing witnesses.  (Doc. No. 257). Again, however, for the reasons noted in the preceding paragraphs, this Motion will be <u>denied</u>.

8.  **Motions relating to Michael Edwards, Esq.**

Plaintiff obviously is dissatisfied with his former attorney's Declaration, so he has filed Motions seeking permission to depose counsel by written questions and/or to secure a written statement from him.  (Doc. Nos. 89, 125 and 126)  However, inasmuch as there is no ambiguity in Mr. Edwards' Declaration, such declaration speaks for itself, and Plaintiff is not entitled to depose Mr. Edwards, his Motion will be <u>denied</u>.

9.  **Motions for Mental and Physical Examinations**

Plaintiff has filed Motions seeking an Order for a mental evaluation to determine whether he is "fully mentally sound to conduct legal representation on his own or not."  (Doc. Nos. 157 and 177).  Defendants oppose the Motions on the grounds that there is no Rule which permits the Court to order such an examination and, even if it can be ordered, Plaintiff should be required to pay for it.  (Doc. Nos. 158 and 188).  The Court has observed that Plaintiff does not claim he is mentally incapable of proceeding with his case.  Furthermore, Plaintiff has adequately represented himself in these proceedings; therefore, his Motions (Doc. No. 157 and 177) will be <u>denied</u>.

Plaintiff also has asked the Court to Order a physical evaluation of "the injury at hand" by a orthopedic specialist at Central Prison to determine the cause of the injury and its

duration, to confirm that it already has been diagnosed, to determine what effects the injury has on a person, to explain the injury in detail, and to explain how bad the injury could get. (Doc. No. 179). Defendants oppose the Motion on the grounds that there is no Rule to authorize such an examination and, in any event, that Plaintiff should be required to pay for it himself. (Doc. No. 188). The Court is aware that Plaintiff has alleged that he sustained a specific injury during a specific period of time for which he underwent corrective surgery. Plaintiff has not alleged continued, ongoing treatment for any ongoing problems related to the injury. Consequently, Plaintiff has failed to establish that a current evaluation of his physical health would be relevant his claim. Therefore, this Motion (Doc. No. 179) also will be <u>denied</u>.

**10. <u>Motions for Evidence from the Jail</u>**

By several of his Motions, Plaintiff requests "additional information on medical records that [he] has requested once from defendants" concerning a nurses visit which he reportedly had on February 13, 2003 (Doc. Nos. 146, 171); he seeks to compel pro-duction of the "punch cards or pod sheets" on which guards re-portedly recorded their observations concerning his activities during the 14-day period in question (Doc. Nos. 163, 164 and 213); he seeks to compel Defendants to provide him with pictures

of certain areas of the jail, the bed on which he reportedly slept (without the mattress), the shackles and suicide smock which he reportedly wore, and to have the shackles and smock available at trial (Doc. No. 172); and he seeks a copy of a complaint which he reportedly filed in "2004 or early 2005 that was submitted to Jail and detention section, Division of Health Service regulation, Department of Health and Human Services 2710 MSC Raleigh, NC 27699-2710." (Doc. No. 186).

By way of response, Defendants object to having to produce the punch cards/observation records for the period in question as unduly burdensome and oppressive. (Doc. No. 155). Defendants explain that in 2003, neither the Sheriff nor the Jail's medical services provider maintained their records in readily identifiable or labeled boxes; therefore, there is no index, summary, compilation or abstract from which the information could be retrieved without an extensive manual search through numerous boxes of uncategorized materials. (Id.). Defendants further report that a search already has been completed on some 20 of 60 to 70 unlabeled boxes containing a "hodgepodge" of years worth of records for the Jail, but has not revealed any information besides that which already has been provided to Plaintiff. (Id.).

In response to Plaintiff's request for a information related to a nurse's visit on February 13, 2003, Defendants assert that

they already have provided Plaintiff with the only medical re-
cords from the Jail which they were able to locate, consisting of
nurse sign-up sheets and receipts for the $10.00 non-emergency
co-pay charges.  (<u>Id</u>.).  Defendant further contend that informa-
tion concerning Plaintiff's reported treatment for a foot problem
would be irrelevant, in any case, because Plaintiff's claims
relate to a right arm injury which he reportedly sustained.
(<u>Id</u>.).  The Court agrees that the sought after information simply
is not relevant to the issues involved in this case.  Therefore,
Plaintiff's Motions for this information (Doc. Nos. 146 and 171)
will be <u>denied</u>.

Similarly, given the reported status of the Rutherford
County Jail's records, the Court agrees that Plaintiff's requests
for the punch card information is unduly burdensome, particularly
in light of the fact that the Court is going to allow Plaintiff
to submit his questions to the only Jail employee whom he has
identified as having observed him while he was in restraints.  In
other words, the Court finds that Plaintiff's expressed need for
the subject documents does not outweigh the burdensomeness of
Defendants' having to conduct a further search for documents
which may not even exist.  <u>See</u> <u>Anker v. G.D. Searle & Co.</u>, 126
F.R.D. 515, 518 (M.D. N.C. 1989).  Therefore, Plaintiff's Motions
for this material (Doc. Nos. 163, 164 and 213) will be <u>denied</u>.

Concerning the requests for pictures and the other materials, such information could be helpful if this matter goes to trial. However, inasmuch as the Court has not yet ruled on Defendants' Motion for Summary Judgment, Plaintiff's Motion for the pictures, shackles and smocks (Doc. No. 172) will be <u>denied</u> as premature.

### 11. <u>Motions for address information</u>

Plaintiff has filed assorted Motions seeking address information for Dr. Bush, a physician who treated him for his reported arm injury (Doc. Nos. 110 and 137); seeking Susan Lovelace's last known and home addresses (Doc. Nos. 111, 118 and 127); seeking addresses for inmates Billy Bradley, Abraham Dewberry and Joshua Hensley (Doc. Nos. 113 and 180); and seeking an address for Dorthea Dix Hospital (Doc. No. 114).

However, since the time that he filed these Motions, Plaintiff reports that the N.C. Department of Corrections has provided him with the addresses he sought for the three inmates (Doc. No. 189). Therefore, Plaintiff's Motions seeking that information (Doc. Nos. 113 and 180) will be <u>dismissed</u> as moot. Likewise, one of Plaintiff's amended Motions (Doc. No. 224) reflects his discovery of a mailing address for Dr. Bush. Therefore, Plaintiff's Motions seeking that address (Doc. Nos. 110 and 137) also will be <u>dismissed</u> as moot. Furthermore, Plaintiff has failed to demon-

strate that Dr. Vance, the practitioner he saw at Dorthea Dix Hospital will have any information which is helpful to this litigation at this specific time. Therefore, Plaintiff's Motion seeking an address for Dorthea Dix Hospital (Doc. No. 114) will be <u>denied</u>.

Concerning his Motions seeking addresses for Susan Lovelace, the Court has determined that Plaintiff should be allowed to serve his questions upon Ms. Lovelace. However, because Defendants have indicated that Ms. Lovelace is employed at the Rutherford County Jail, a copy of this Order and Plaintiff's questions can be sent to her at her place of work. As such, neither Plaintiff nor this Court has any need for any additional addresses for Ms. Lovelace. Consequently, Plaintiff's Motions seeking that information (Doc. Nos. 111, 118 and 127) will be <u>denied</u>.

### 12. <u>Motions to Exclude Evidence</u>

Plaintiff has filed several Motions seeking to "suppress[]" all references to the charges which landed him in the custody of the Rutherford County Jail, including all information regarding the age of the victim. (Doc. Nos. 205, 239 and 242). According to Plaintiff, such information is "highly irrelevant" to his claims against Defendants. (Doc No. 205). Defendants oppose the Motions contending that Plaintiff has failed to carry his burden of showing that the information would not be admissible for any

purpose; and, in fact, that the subject information would be admissible to explain why Plaintiff was taken out of the general population and placed into protective custody at the Jail. (Doc. No. 211).

The Court finds that if this matter were to go to trial and an issue were to arise concerning Defendants' motive for placing Plaintiff in protective custody, the subject information would be highly relevant to establishing that motive. However, even if this matter does go to trial, there simply does not appear to be any issue concerning Defendants' reasons for placing Plaintiff in protective custody. Rather, the issues appear to relate to whether Plaintiff was placed in four-point restraints while in protective custody and whether such restraints injured him. As such, the Court believes that Plaintiff's Motions to exclude this evidence (Doc. Nos. 205, 239 and 242) should be <u>granted</u>. However, in the event that an issue arises concerning the reasons for Plaintiff's protective custody, Defendants certainly may file an appropriate Motion to have the Court revisit this issue.

### 13. **Miscellaneous motions**

Plaintiff has filed a series of Motions: asking the Court to direct the Department of Human Services to provide him with information concerning the State's policy for jails operating video cameras in certain areas of the facilities (Doc. No. 138);

seeking records explaining why cameras do not record inside jails (Doc. No. 169); seeking the production of rules-related documents from Chris Wood, who Plaintiff identifies as a "Jail Inspector" (Doc. No. 174); and seeking documents regarding inmate-on-inmate assaults (Doc. No. 255). However, the foregoing Motions do not appear to seek documents which are pertinent to this case. Moreover, Plaintiff withdrew his request for documents related to inmate-on-inmate assaults by his Motion to dismiss (Doc. No. 264). Therefore, Plaintiff's Motion to dismiss (Doc. No. 264) will be <u>granted</u>; his Motion for the inmate assault information (Doc. No. 255) will be <u>dismissed</u>; and the other Motions (Doc. Nos. 138, 169 and 174) will be <u>denied</u>.

Plaintiff also has filed a Motion to Amend a Notice which he filed (Doc. Nos. 187 and 183, respectively). Because the amendment seeks to correct the date on which Plaintiff reportedly appeared in Court, his Motion (Doc. No. 187) will be <u>granted</u>.

Plaintiff also seeks permission to amend his Complaint to include a request that the Jail be enjoined from "destroying medical documents without transfer[r]ing the critical information onto a computerized system to save ned[ed] medical information in further situation . . . ." (Doc. No. 258). However, such request, which is not tied to any of the allegations set out in Plaintiff's Complaint, will be <u>denied</u>.

### 14. Motions for unrelated medical evidence and/or trial subpoenas

Plaintiff seeks to serve interrogatories on Dr. Muse concerning his mental status during the relevant period in order to show he did not need to be placed in a suicide smock (Doc. No. 90); he seeks to depose Dr. Vance by written depositions (Doc. Nos. 95, 125, 130 and 185), and to obtain the "evaluation paper that was conducted at [D]orthea [D]ix Hospital . . . by Dr. Charles Vance" (Doc. No. 201); and he seeks to secure Drs. Bush and Hassan as witnesses at his trial (Doc. Nos. 112, 125 and 219), and to secure statements and/or responses to his interrogatories from Dr. Hassan (Doc. No. 219).

However, as was previously noted, it is not clear that a trial will be had in this matter. Moreover, Plaintiff has failed to demonstrate that either Drs. Muse, Vance or Hassan have information which is relevant to the ultimate issues in this case. Therefore, the foregoing Motions all will be denied.

Plaintiff also seeks subpoenas to produce inmates Bradley, Dewberry and Henslee and Ms. Lovelace for trial (Doc. Nos. 142 and 150). Again, however, because it is not altogether clear that this matter will culminate in a trial, these Motions will be denied.

### 15. Motions pertaining to an unrelated case

Plaintiff reports that personnel at Marion Correctional Institution where he currently is housed gave him a work assignment which he could not perform due to certain back problems caused by Scoliosis; and that he sustained certain disciplinary action for failing to perform the assignment. As a result, Plaintiff has filed Motions for an injunction to preclude Prison personnel from ordering him to perform the assignment and from punishing him for non-compliance (Doc. Nos. 233 and 237). Plaintiff also asks the Court to review the medical records which reportedly document his back condition (Doc. No. 235); and for his medical records to be provided to the Court for a determination that he suffers from Scoliosis (Doc. No. 236). However, inasmuch as Plaintiff has attempted to prosecute separate cases on the basis of these claims, and the allegations are not related to the instant case, these Motions will be <u>denied</u>.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Clerk shall **TERMINATE** Plaintiff's Reply (Doc. No. 166) to one of Defendants' responses and shall **RE-LABEL** that document as a Reply.

2. Plaintiff's Motion in Response to Defendants' Motion for Summary Judgment (Doc. No. 204) is **DISMISSED** as moot.

3. Plaintiff's Motions for Appointed Counsel (Doc. Nos. 147 and 160) are **DENIED.**

4.  Plaintiff's Motions to Amend his Complaint (Doc. Nos. 168 and 182) are **GRANTED.**

5.  Plaintiff's Motion for a Ruling on his outstanding Motions (Doc. No. 121) is **GRANTED** to the extent that the Court now is ruling on such Motions.

6.  Plaintiff's Motion for a Preliminary Hearing (Doc. NO. 256) is **DENIED.**

7.  Plaintiff's Motion for a Jury Trial (Doc No. 214) is **DISMISSED** as premature.

8.  Plaintiff's remaining Motions for Rulings (Doc. Nos. 124 and 241) are **DISMISSED** as moot.

9.  Plaintiff's Motion under 28 U.S.C. § 1915 to grant his requests for depositions and interrogatories (Doc. No. 173) is **DENIED.**

10. Plaintiff's Motion for Records concerning other lawsuits against Defendant Lewis (Doc. No. 123) is **DISMISSED** as moot.

11. Plaintiff's Motion to Polygraph Defendants (Doc. NO. 148) is **DENIED.**

12. Plaintiff's Motion for Production of Grievances (Doc. No. 165) is **DENIED.**

13. Plaintiff's Motions to Compel (Doc. Nos. 250 and 266) are **DENIED.**

14. Plaintiff's Motions seeking to depose and to secure statements from inmates Bradley, Dewberry and Hensley (Doc. Nos. 91, 93, 125, 128, 129, 131, 173, 202 and 257) are **DENIED**.

15. Plaintiff's Motions to depose Michael Edwards, Esq., (Doc. Nos. 89, 125 and 126) are **DENIED**.

16. Plaintiff's Motions for Physical and Mental Examinations (Doc. Nos. 157, 177 and 179) are **DENIED**.

17. Plaintiff's Motions for Evidence from the Jail (Doc. Nos. 146, 163, 164, 171, 172 and 186) are **DENIED**.

18. Plaintiff's Motions for Addresses (Doc. Nos. 110, 113, 137 and 180) are **DISMISSED** as moot.

19. Plaintiff's Motion for Addresses for Susan Lovelace and Dorthea Dix Hospital (Doc. No. 111, 114, 118 and 127) are **DENIED**.

20. Plaintiff's Motions to suppress evidence concerning the charges for which he was arrested (Doc. Nos. 205, 239 and 242 are **GRANTED**.

21. Plaintiff's Motions for miscellaneous relief (Doc. Nos. 138, 169, 174 and 258) are **DENIED**.

22. Plaintiff's Motion to Amend a Notice (Doc. No. 187)and his Motion to Dismiss his Motion for documents regarding inmate-on-inmate assaults (Doc. No. 264) are **GRANTED**; and the Motion for such documents (Doc. No. 255) is **DISMISSED**.

23. Plaintiff's Motions for unrelated medical evidences

and/or trial subpoenas (Doc. Nos. 90, 95, 112, 125, 130, 142, 150 185, 201, 219 and 224) are **DENIED.**

24.  Plaintiff's Motions pertaining to an unrelated case (Doc. Nos. 233, 235, 236 and 237) are **DENIED.**

25.  Plaintiff's Motions seeking to depose, to secure and address for, and to subpoena Susan Lovelace as a trial witness (Doc. Nos. 107, 132, 149, 175 and 176) are **DENIED.**

26.  The Clerk shall re-mail Doc. Nos. 69 and 106 along with a copy of this Order, return receipt requested, to Dr. Andrew Bush at 1139 Carthage Street, Suite 101, Sanford, NC 27330.

27.  Dr. Bush shall, if he so chooses, may provide written answers to questions one, two and eight as set forth in Doc. No. 69.  In the event that Dr. Bush chooses to answer the subject questions, his answers must be accompanied by a sworn declaration indicating that he has, to the best of his recollection and ability, attempted to provide truthful answers to the subject questions.  Alternatively, in the event that Dr. Bush chooses not to answer Plaintiff's questions, he must provide the Court with his reason(s) for that decision.  <u>In either case, Dr. Bush's answers or explanation must be filed with the Court no later than thirty-five (35) days from the date of this Order</u>.

28.  Plaintiff's Motion seeking to obtain answers to three specific questions concerning his claim from Susan Lovelace (Doc.

24

No. 117) is **GRANTED in part and DENIED in part**.

29.  The Clerk shall mail a copy of Doc. No. 117 along with a copy of this Order, return receipt requested, to Susan Lovelace at the Rutherford County Jail.

30.  Ms. Lovelace, if she so chooses, may provide written answers to questions one, two and four as set forth in Doc. No. 117.  In the event that Ms. Lovelace chooses to answer the subject questions, her answers must be accompanied by a sworn declaration indicating that she has, to the best of her recollection and ability, attempted to provide truthful answers to the subject questions.  Alternatively, in the event that Ms. Lovelace chooses not to answer Plaintiff's questions, she must provide the Court with her reason(s) for that decision.  <u>In either case, Ms. Lovelace's answers or explanation must be filed with the Court no later than thirty-five (35) days from the date of this Order</u>.

**IT IS FURTHER ORDERED that** the Clerk shall send copies of this Order to Plaintiff and to counsel for Defendants.

**SO ORDERED,**

Signed: April 6, 2010

Graham C. Mullen
United States District Judge