```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                     ASHEVILLE DIVISION
                     1:04CV152-02-MU
```

JONATHAN L. HENSLEE         )
    Plaintiff,              )
                            )
     v.                     )
                            )
SHERRI SIMMONS, Lieute-     )
  nant at the Rutherford    )
  County Jail; and          )
ALAN YOUNG, Employee at     )           O R D E R
  the Rutherford County     )
  Jail.                     )
    Defendants.             )
_____)

**THIS MATTER** comes before the Court on Plaintiff's Complaint under 42 U.S.C. § 1983, filed (Doc. No. 1); on Defendants' Motion for Summary Judgment, filed July 10, 2009 (Doc. No. 193); on Plaintiff's Motion for Reconsideration, filed June 10, 2010 (Doc. No. 284); and on his Motion to Dismiss Defendants' Motion for Summary Judgment, filed June 23, 2010 (Doc. No. 287).

For the reasons stated herein, Plaintiff's Motion for Reconsideration will be denied. Furthermore, for the reasons stated herein and for the further reasons stated in Defendants' Memorandum in support of summary judgment (Doc. No. 198), Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment will be denied; Defendants' Motion for Summary Judgment will be granted; and Plaintiff's Complaint will be dismissed.

## I. FACTUAL BACKGROUND

As has previously been explained by this Court, the relevant facts of this case are that Plaintiff alleges that during a two week period, from February 4, 2003 until February 18, 2003, his clothes were taken from him, he was made to wear a suicide smock, and he was kept in four-point arm and leg restraints. (Doc. No. 1 at 4). Plaintiff further alleges that during that period, he was unable to properly use the bathroom due to the presence of the smock and the restraining devices, so he was forced to soil himself and to shower, without aid of his toiletries. (Id.). Plaintiff alleges that he also was made to sleep on an iron box spring without a mattress or linen.[1] (Id.). By way of relief, Plaintiff requested $50,000 in damages and "some time cut off [his] sentence . . . ." (Id. at 4-5).

---

[1] Although Plaintiff's Complaint made absolutely no mention of any physical injury, eight days after he filed that Complaint he filed a discovery motion requesting copies of certain documents from his Jail records. (Doc. No. 2). That motion specifically requested a copy of Plaintiff's medical records concerning a surgery which he underwent on his right elbow reportedly as a result of his restraint. (Id. at 1). In its Order affirming in part and vacating in part this Court's Order dismissing Plaintiff's Complaint for his failure to state a cognizable claim for relief, the Fourth Circuit Court of Appeals indicated that this Court should have liberally construed Plaintiff's discovery motion to read into his Complaint an allegation of physical injury so as to render the claim sufficient to withstand initial review. Henslee v. Lewis, et al., (4th Cir. Nov. 3, 2005). Therefore, once Plaintiff's case got remanded to this Court, his Complaint was treated as if it had alleged an injury to his right elbow and Defendants were made to respond to that allegation.

During Plaintiff's deposition[2], he testified that after approximately one week of this restraint, he wrote a letter to Defendant Young advising of his belief that his restraint/conditions were unlawful, and requesting that they be terminated. (Doc. No. 194-1 at 45-46). On the following day, Plaintiff reportedly filed the only grievance which he submitted during his entire 8 ½ month period of detention at the Rutherford County Jail. (Id. at 47). Such grievance reportedly complained that the restraint was unlawful and should be discontinued. (Id. at 48).

During his deposition Plaintiff further testified that over the course of his unlawful restraint, he was visited by his criminal defense attorney, Michael Edwards ("Edwards," hereafter). (Id. at 54). In particular, Plaintiff states that on the second day of his restrictions, he spent 30 minutes or more in a visiting booth with Edwards, at which time Edwards observed his predicament. (Id. at 54-55). According to Plaintiff, Edwards advised that he would look into the matter and try to have Plaintiff moved to Central Prison for safekeeping. (Id. at 55).

Plaintiff also stated that his unlawful restraint was observed by Rutherford County Jail Officer Susan Lovelace

---

[2] Plaintiff was deposed on May 27, 2009, at the Marion Correctional Institution where he currently is being housed.

("Lovelace," hereafter), and by three detainees. (Id. at 56 and 59-60). According to Plaintiff, Lovelace essentially encouraged him to endure his conditions. (Id.).

Defendants deny that Plaintiff ever was placed in either a suicide smock or four-point restraints during the course of his pre-trial detention at the Rutherford County Jail. (Doc. No. 55). Defendants report that Plaintiff merely was placed in protective custody at the Jail in order to protect him from the risk of harm posed by fellow inmates due to the nature of Plaintiff's charges. (Id.). Defendants further contend that the elbow injury which Plaintiff refers to was sustained by him during an earlier period of incarceration in the North Carolina Department of Corrections ("NCDOC," hereafter) as a result of his involvement with various routine physical activities, not by any misconduct of Defendants. (Doc. No. 194).

On July 10, 2009, Defendants filed a Motion for Summary Judgment seeking a dismissal of Plaintiff's action. (Doc. No. 193). In support of that Motion, Defendants submitted a Declaration from Edwards reflecting that although he visited with Plaintiff during the period that he indicted, he did not observe the conditions which Plaintiff describes. (Doc. No. 195). Edwards also denies having had a conversation about any unlawful restraints or a "safekeeping" transfer. (Id.).

4

Defendants also have submitted copies of certain of Plaintiff's medical records. (Doc. No. 199). Those records reference Plaintiff's self-reports of basketball and weight lifting injuries to his right elbow which occurred while he was in the custody of the NCDOC, that is, during a period which pre-dates the February 4 through February 18, 2003 time in which he allegedly was injured by Defendants. (Id.). For example, one such document dated December 20, 2002, is a "Sick Call Appointment Request" form on which Plaintiff reported: "I have a torn tendon of ligament in my right elbow and it is giving me great pain. I would like it if you all would see me ASAP." (Id. at 3). Plaintiff submitted another "Sick Call Appointment Request" form on January 21, 2003, seeking an evaluation by a doctor for his reports of "mucle [sic] rips and ligament rips in [his] right elbow and upper arm . . ." making him "unable to perform work duties that were assigned." (Id. at 6).

Another document, treatment notes from the NCDOC for December 19 through December 23, 2002, reflect that a nurse's appointment was scheduled for Plaintiff for December 23, 2002 because his "right elbow [was] painful to pressure points[; his] right biceps [was] moderately swollen[; and he had] guarded movements noted to [sic] arm." (Id. at 4). Another entry on that same document reflects that on December 23, 2002, Plaintiff

5

was admitted to the infirmary for a work-up, at which time he reported that two days earlier when he was "lifting 185 lb." in weights, he experienced biceps pain. (Id.). Also, an NCDOC Consultation/Referral" form dated January 7, 2003 reflects that Plaintiff was referred for a physical therapy consultation to evaluate his "pain, swelling w/ parathesias of his elbow, [two degrees] ulnar nerve entrapment from old injury '02 – aggravated old injury yesterday playing basketball." (Id. at 5).

Interestingly, those documents also include an NCDOC treatment note for Plaintiff from November 11, 2003 -- months after his alleged injury in this case -- reporting that: "right elbow pain worsened [after] kitchen work. [History of] injury 1 yr ago [at] Salisbury Prison from lifting weights. Now [complaining of history of] numbness to right 5th digit resolving but [decreased] ROM." (Id. at 9). The documents include a treatment note for an emergency room visit which Plaintiff had on January 7, 2004, which was approximately three months before he underwent corrective surgery. Such notes reflect his complaints of "coldness, [decreased] feeling, [decreased] color in [his] right arm – present when he awoke this am (had played basketball yesterday 1st time in 3 months) injured right elbow lifting weights 11/02 12/02 ([at] Salisbury Prison [diagnosis of] nerve entrapment (quoted inmate) assessed by Mr. Hedgepeth PA." (Id. at 10).

6

In addition, Defendants have submitted a copy of a grievance dated February 26, 2003, that is, eight days <u>after</u> the conclusion of the alleged restraint. (Doc. 197, Ex. C). Such grievance makes <u>no</u> reference to the restraint, but merely seeks a prescription for Prozac. (<u>Id</u>.).

Thereafter, Plaintiff filed numerous Motions seeking responses to interrogatories and copies of documents which he believed would support his claim that he was restrained, injured by Defendants, and underwent corrective surgery for "cubital tunnel syndrome," a condition that was different from the problems which he admittedly experienced due to exercise and weight lifting before and after the injury in question in the instant case. Although most of those Motions were denied, by Orders entered December 19, 2008 (Doc. No. 106) and April 6, 2010 (Doc. No. 273), the Court granted Plaintiff's request to serve his interrogatories upon Officer Lovelace and Dr. Bush, who reportedly performed the corrective surgery on Plaintiff's elbow.

On April 12, 2010, Lovelace filed a Declaration in response to Plaintiff's interrogatories. (Doc. No. 276). Such Declaration reports that Lovelace "do[es] not recall ever seeing [Plaintiff] in either shackles or a suicide smock during his lengthy time in [Rutherford County Jail's] custody. (<u>Id</u>. at 1). Indeed, Lovelace reports having seen inmates who were shackled

7

due to their risk of flight, but she reportedly does not recall ever seeing "an inmate who was both shackled and wearing a suicide smock." (Id.). Lovelace also states that she has no recollection of "ever seeing [Plaintiff] without a mattress" and she has "never known of a mattress being taken away as a punitive measure." (Id. at 2). Last, Lovelace reports that she has no recollection of Plaintiff ever saying anything to her about shackles, smocks or anything similar to that. (Id.).

On June 14, 2010, Dr. Bush filed his verified response to Plaintiff's interrogatories. (Doc. No. 285). Such response explains that "cubital tunnel syndrome" is a "condition categorized as an entrapment neuropathy . . . ." (Id. at 1). Dr. Bush explains that such condition is the result of an injury which can be caused by repetitive and/or prolonged leaning on the elbow, maintaining in a flexed position for long periods of time, or it can occur from "changes in the epicondylar groove due to injuries such as fractures or ligament injuries . . . , arthritis, cysts, tumors or anomalous muscle bands that apply pressure to the nerve." (Id. at 1-2). Dr. Bush also describes the corrective surgical procedure which is typically performed for such a condition. (Id. at 2). Last, Dr. Bush, reports no recollection of having performed surgery on Plaintiff, and no medical records in his custody concerning such a procedure.

8

(Id.).

## II. **STANDARD OF REVIEW**

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, to withstand a motion for summary judgment, the non-moving party must forecast the existence of competent evidence sufficient to reveal the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246-47 (1986).

In determining whether a "genuine issue of material fact" exists, thereby precluding the entry of summary judgment in favor of the moving party, this Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences from such evidence in his favor. Erwin v. United States, 591 F.3d 313, 327 (4th Cir. 2010). However, a non-movant cannot create a genuine issue of material fact through speculation or a compilation of inferences. Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008). Nor can that party overcome a motion for summary judgment by relying upon allegations or denials in his own pleading. Fed.R.Civ.P. 56(e)(2). Moreover,

9

"the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 246-47. Rather, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Thompson v. Carlisle, 2010 WL 382044 *1 (4th Cir. Feb. 3, 2010) (unpublished). In sum, therefore, "[t]he relevant inquiry in a summary judgment analysis is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. (internal quotation and citation omitted).

### III. **ANALYSIS**

It is well settled that the Eighth Amendment protects prisoners like Plaintiff from "cruel and unusual" punishments. The determination of whether a punishment is cruel or unusual in the context of prison conditions is made by determining whether the prison officials acted with deliberate indifference to the inmates' health or safety. Hope v. Pelzer, 536 U.S. 730, 737-38 (2002). Thus, courts have developed a two-part test to determine whether the alleged deprivation violates the Eighth Amendment. The prisoner must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Williams v. Griffin, 952 F.2d

820, 824 (4th Cir.1991). The first showing requires the court to determine whether the deprivation of a basic human need was objectively "sufficiently serious," while the second requires it to determine whether the officials subjectively acted with a "sufficiently culpable state of mind." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Furthermore, to succeed on a claim of excessive force under the Eighth Amendment's prohibition against cruel and unusual punishments, plaintiffs must show that the officers "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986). It goes without saying, however, that if Plaintiff fails to forecast evidence to suggest that he can satisfy the foregoing elements, his case cannot withstand Defendants' Motion for Summary Judgment. Carlisle, supra, at *1.

In the instant case, Plaintiff alleges that Defendants restrained him for 14 days, causing him to sustain right cubital tunnel syndrome, for which he underwent corrective surgery. Plaintiff further alleges that during that two-week period, his restraint was observed by his former defense attorney, who told Plaintiff he would attempt to have him transferred because of the situation, and by a Jail employee, who reportedly tried to encourage Plaintiff to withstand his ordeal; and that the surgery

which he underwent was not for any condition related to his activities as Defendants assert.

Notwithstanding those matters, the evidentiary forecast before the Court completely contradicts and/or undermines Plaintiff's assertions. First, the Court notes that although Plaintiff claims that he filed a single grievance while at the Rutherford County Jail and that such grievance complained about his unlawful restraint, Defendants have produced a copy of a grievance which Plaintiff filed days after such alleged restraint. That grievance, however, requests a prescription for Prozac and makes no mention of any restraint.

Second, the Declaration from Plaintiff's former attorney, an individual who has no reason to favor Defendants, denies any knowledge of Plaintiff's alleged restraint, and denies having told Plaintiff that counsel would attempt to secure his transfer.

Third, the medical records which Defendants submitted contain Plaintiff's multiple complaints about injuries to his right elbow which resulted from his playing basketball and lifting weights. Those record further reflect that the complaints were made both shortly before and not long after Plaintiff allegedly sustained the injury from the alleged restraint. Similarly, the records reflect that both before and after the alleged restraint, Plaintiff was diagnosed with a

condition, right ulnar entrapment; and that, contrary to his assertions, the condition for which he underwent surgery (cubital tunnel syndrome) is a subcategory of right ulnar entrapment, the condition caused by his physical activities.

Moreover, Plaintiff's own discovery efforts have produced an evidentiary forecast which tends to show that the Jail employee whom he identified did <u>not</u> observe or talk to him while he allegedly was in restraints; and that the condition for which he underwent surgery could have been caused by any number of factors, including repetitive movements like those made while weight lifting and playing basketball, or by anomalous muscle bands putting pressure on the nerve.

Based upon the foregoing, the evidentiary forecast strongly suggests that there was no unlawful restraint. Furthermore, the Court concludes that there are no genuine issues of material fact requiring resolution and that Defendants are entitled to a judgment as a matter of law. Accordingly, Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment will be <u>denied</u> and Defendants' Motion for Summary Judgment will be <u>granted</u>.

Finally, the Court has reviewed Plaintiff's Motion for Reconsideration of his request for a Physical and Mental Examination. (Doc. No. 284). However, for the reasons which were previously stated in the Court's Orders entered December 19,

2008 (Doc. No. 106) and April 6, 2010 (Doc. No. 273), Plaintiff's Motion for Reconsideration will be <u>denied</u>.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Reconsideration (Doc. No 284) is **DENIED;**

2. Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment (Doc. No. 287) is **DENIED;**

3. Defendants' Motion for Summary Judgment is **GRANTED;** and

4. Plaintiff's Complaint is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: June 30, 2010

Graham C. Mullen
United States District Judge